IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JANE DOE,

      Plaintiff,

   v.

CRYSTAL RIVERA, and
MONROE COUNTY,

      Defendants.               JURY TRIAL DEMANDED

COMPLAINT

1.    Plaintiff is an adult with an address in Monroe County, PA.

2.    Defendant Monroe County is a county in Pennsylvania, with an Administrative Building at One Quaker Plaza, Stroudsburg, PA 18360.  At all times material, Monroe County acted through its duly authorized agency, Monroe County Office of Children & Youth, with an office at 730 Phillips Street, Stroudsburg, PA 18360 ["the agency"].

3.    The agency is a "county agency" defined under 23 Pa.C.S. § 6303 as a county children and youth social service agency established pursuant to § 405 of the Act of June 24, 1937 (P.L. 2017, No. 396), known as the County Institution District Law, or its successor, and supervised by the Pennsylvania Department of Human Services ["the Department"] under Article IX of the Act of June 13, 1967 (P.L. 31, No. 21), known as the Public Welfare Code.

4.    At all times material defendant Crystal Rivera was the supervisor of the agency at 730 Phillips Street, Stroudsburg, PA.

## Jurisdiction

5.    This court has jurisdiction over this action pursuant to 28 USC § 1331, governing claims under federal law, and § 1343, governing civil rights claims.

## Venue

6.    Venue in this district is appropriate under 28 USC § 1391 because defendants reside, and the acts complained of took place, in this district.

## Background

7.    Plaintiff has two sons by her first husband ["older son" and "younger son"].

8.    Plaintiff's second and former husband has an address in Northampton County, PA.

9.    Plaintiff and second husband had a daughter in 2013.

10.    Plaintiff and second husband were married in July 2014.

11.    In November 2014, second husband adopted plaintiff's two sons.

12.    Plaintiff and second husband separated in December 2018.

13.    On about June 10, 2019, plaintiff filed complaints against second husband for divorce and for custody [later consolidated] in the Monroe County

Court of Common Pleas ["custody proceedings"].

14.     On or about June 27, 2019, plaintiff and second husband reached a custody stipulation, filed on July 1, 2019, whereby plaintiff and second husband shared legal custody of the three children, plaintiff had primary custody, and second husband had every other weekend and every Friday from the end of the school day through Saturday at noon.  On July 2, 2019, an order approving the custody stipulation was entered [Sibum, J.].

15.     Plaintiff and second husband were divorced on May 4, 2020.

16.     On November 17, 2020, the Recommendation of the Conciliator was adopted as an interim order of court and the parties were directed to abide by its terms [Higgins, J.].  Part 2, Shared Physical Custody, provides:

> "The parties will share custody of the children with Mother having primary physical custody, under and subject to partial physical custody for Father as follows:
>
> > "(a)    Father will have partial physical custody on alternating weekends from Friday at 3:30 p.m. to Sunday at 7:00 p.m. To commence this schedule, Father will have physical custody on the weekends of November 13-15, 2020 and November 20-22, 2020; Mother will have physical custody on the weekend of November 27-29, 2020; Father will have physical custody of the weekend of December 4-6, 2020; and weekend custody shall alternate thereafter.
> >
> > "(b)    Father will also have physical custody at other times when the parties agree."

-3-

17.     Second husband was ordered to pay plaintiff over $300 a month in child support.  By June 2021, second husband was in arrears of about $3,000 in monthly support payments, and had stopped making monthly payments.

18.     By June 2021, the relationship between second husband and older son had become antagonistic.

19.     On or about June 6, 2021, second husband and older son had a physical altercation in which second husband pinned the son to the ground.  That day, the son left second husband's house and went to stay with his maternal grandparents.

20.     On or about June 8, 2021, a teacher at older son's school saw marks on his wrist.

21.     On or about June 10, 2021, ChildLine received an anonymous phone call.  ChildLine is a toll-free hotline, part of a mandated statewide child protective services program designed to accept child abuse referrals and general child well-being concerns, and transmit the information quickly to the appropriate investigating agency.

22.     On about June 18, 2021, agency case worker Victoria-Lynn Lipyanic called plaintiff to tell her the agency was conducing a welfare check.  Ms. Lipyanic asked plaintiff to meet her at the agency office in Stroudsburg on June 22.  Via text message on June 24, Ms. Lipyanic asked for the children's doctor's information.

23.     On June 25, 2021, Ms. Rivera sent plaintiff a text message that plaintiff had an appointment on June 30, 2021.  Ms. Rivera advised that Ms. Lipyanic would not be there and plaintiff would be meeting with Ms. Rivera.  Ms. Rivera told plaintiff to bring all the children.

24.     On Wednesday, June 30, 2021, plaintiff went to the agency office with her three children as requested by Ms. Rivera.  Without earlier notice to plaintiff, younger son and daughter underwent a forensic interview by Linda Cortwright of the Child Advocacy Center.  Ms. Cortwright asked on June 30, 2021, why was older son there?

25.     Older son, the subject of the anonymous hotline caller, did not undergo a forensic interview.

26.     On June 30, 2021, the county, through Ms. Rivera, and an unknown assistant district attorney present, after the two forensic interviews, unlawfully seized daughter and younger son from their mother.  Ms. Rivera told plaintiff she had a choice either to put the two children in foster care or to give custody of them to second husband, who was close by, and who took custody of daughter and younger son.

27.     Ms. Rivera called the Stroud Area Regional Police to have plaintiff removed from the agency premises.

-5-

28.     No reason was given why the agency seized either the daughter or the younger son from plaintiff.  The younger son was not a subject of the anonymous call to ChildLine.

29.     No notice was given at any time to plaintiff that losing custody of daughter and younger son was a potential outcome of the June 30 meeting.

30.     As of June 30, 2021, no hearing before any kind of tribunal was held or scheduled.  The November 17, 2020, custody order of Common Pleas was in effect.

31.     Ms. Lipyanic sent letters dated July 1, 2021, both to plaintiff and to older son.

32.     One of the July 1 letters to plaintiff says:

"A suspected Sexual Assault child abuse report regarding your child [daughter] has been received by [the agency] and [Department of Human Services].  The alleged perpetrator is listed as [older son].

"At any time, upon written request, you may receive a copy of the information contained in said report, except that no data may be released that would identify persons who made the report or cooperated in subsequent investigations.

"This suspected child abuse report will be reported to law enforcement officials if the initial review gives evidence that the abuse is homicide, sexual abuse or exploitation, or serious bodily injury perpetrated by persons whether related or not related to the victim, or child abuse perpetrated by persons who are not family or household members. Persons named as perpetrators may not be hired in some child caring jobs under certain conditions according to Act 33 of 1985.

-6-

"The Agency will complete the investigation as quickly as possible to determine whether the report is 'INDICATED,' which means that substantial evidence of the abuse exists; 'FOUNDED,' which means that a judicial adjudication of such abuse has occurred; or 'UNFOUNDED,' which means that substantial evidence does not exist, there has been no judicial adjudication and/or substantial evidence could not be found within the requested time period. In cases where the report is determined to be unfounded, the report will be expunged within 120 days following one year from the date of receipt of the report at ChildLine. Unfounded reports may be kept on file by this Agency when the family receives services provided or arranged by the Agency.

"You have the right to counsel (an attorney) during this investigation, and if you desire to utilize counsel, you should take this correspondence to your counsel immediately. * * *

"Monroe County Children & Youth Services is anxious to assist you in every way we can to provide a safe, nurturing home for your child.  Please call the caseworker listed below at 570-420-3590 between 8:30 a.m. - 5 p.m. to schedule an appointment as soon as you receive this letter."

33.     The other July 1 letter to plaintiff says:

"This letter is to inform you that [the agency] received a report of suspected causing sexual abuse or exploitation of a child through any act/failure to act abuse concerning [daughter] pursuant to the Child Protective Services Law (23 PA.C.S. Chapter 63), the purpose of which is to protect children from further harm.  Please be advised that you have been named as the alleged perpetrator in the report.  The information contained in the report will be available to you upon completion of the investigation and upon your written request.  We are further required to report cases of sexual abuse, serious bodily injury, certain criminal offenses, certain serious physical injuries and abuse perpetrated by persons who are not family members, to law enforcement officials.

"The Agency will complete the investigation as quickly as possible to determine whether the report is 'INDICATED,' which means that substantial evidence of the abuse exists; 'FOUNDED,' which means that a judicial

adjudication of such abuse has occurred; or 'UNFOUNDED,' which means that substantial evidence does not exist, there has been no judicial adjudication and/or substantial evidence could not be found within the requisite time period.  In cases where the report is determined to be unfounded, the report will be expunged within 120 days following one year from the date of receipt of the report at ChildLine. Unfounded reports may be kept on file by this Agency when the family receives services provided or arranged by this Agency.

"In the event of an Indicated report, you will have the right to seek amendment or expunction of the report, through the Secretary of the Pennsylvania Department of Human Services at P.O. Box 2675, Harrisburg, PA 17105-2675.  If the agency deems this report to be Indicated, you will receive notice thereof, together with a complete explanation of your appeal rights.  During such appeal, you will be afforded other basic rights including the right to introduce evidence, to be heard in your own behalf, and to cross-examine witnesses.

"As a result of an Indicated or Founded report, your ability to maintain or obtain employment in a childcare facility or program, or a public or private school may be adversely affected.  Your ability to become a foster or adoptive parent may also be affected.  If the report is determined to be 'Indicated,' we will assist in providing counseling services to the victim and family and develop a plan to help prevent any recurrences of the abuse.

"You have the right to counsel (an attorney) during this investigation, and if you desire to utilize counsel, you should take this correspondence to your counsel immediately. * * *

"Should you have any change of address from the address that is contained on this letter, you must contact the Agency immediately.  If you have any other questions or comments, please feel free to contact me at 570-420-3590, between the hours of 8:30 a.m.- 5 p.m."

34.    Neither July 1 letter says the agency had taken daughter and younger

son from plaintiff the day before, and neither letter mentions younger son.

35.     Dated [Thursday] July 1, 2021, second husband's counsel in the

custody litigation, prepared two petitions: "Emergency Petition for Custody" and

"Petition for Modification of Custody Order."

36.     The emergency petition says in part:

"6.     It is in the best interests and permanent welfare of the minor children
[younger son and daughter] to award emergency custody to Father on a
temporary basis for the following reasons:

          "a.     Monroe County Children & Youth Services are investigating a
                  sexual misconduct action between the minor children [older son]
                  and [daughter];

          "b.     Monroe County Children & Youth Services are also
                  investigating Mother, [plaintiff], as to the sexual misconduct
                  between the minor children, and the possibility of her being fully
                  aware of the sexual misconduct and her possibly 'covering up'
                  the sexual misconduct between the minor children.

"7.     Based on the foregoing, Father believes, and therefore avers, that the
minor children [younger son and daughter] are in immediate danger of harm
if they are not removed from Mother's physical custody and placed in the
custody of Father until such time as the Court can make a full determination
of the best interests of the minor children."

37.     Second husband asked the court to grant him primary physical custody

of daughter and younger son.

38.     On Friday, July 2, 2021, both petitions were filed in Common Pleas.

39.     An order dated July 7, filed July 9, 2021, without input from plaintiff,

provided in ¶ 2:

"Defendant Father [second husband] shall be granted sole temporary physical custody of the minor children [younger son and daughter] pending further Order of Court."

40.     By mailing dated September 2, 2021, the Department sent "indicated" investigation reports [form CY-48] to plaintiff and older son: "An indicated report means that a county children and youth agency or the Pennsylvania Department of Human Services made a determination that you committed child abuse."

41.     The reports identify Ms. Lipyanic as investigating worker, Ms. Rivera as supervisor, Stacie Gill as administrator/designee, and Elizabeth Weekes as legal review.  "Date of approval" is 8/23/21 and "date of review" is 8/24/21.

42.     Under "Identifying Information," the reports say:

"Date of Incident Begin          6/1/2021

"Referral Received Date          6/30/2021 6:14:00 PM

"Date of Incident End            6/30/2021"

43.     However, under "IV. Investigation/Assessment Status," the reports say the agency received "GPS concerns" on June 10 "regarding neglect and possible inappropriate physical contact between" older son and daughter.

44.     The reports say a "CAC" was held on June 30, but do not say that younger son and daughter were seized then from mother and given to second husband.

45.    The reports identify second husband as father-biological of daughter, but otherwise do not mention second husband, other than to say that daughter and younger son have been with their father since June 30.

46.    Plaintiff [and older son] appealed the indicated reports to the Department Bureau of Hearings and Appeals.  Hearing was held on April 5, 2022.

47.    On July 11, 2022, the Administrative Law Judge issued an adjudication and recommendation that the appeals of plaintiff and older son be sustained, directing the Department of Human Services to expunge the indicated reports.  The recommendation was ordered adopted by the Bureau.  The agency did not seek reconsideration of or appeal from the order.

Cause of action vs Rivera and County -
Violation of 14th Amendment right
<u>to procedural due process of law</u>

48.    The 14th Amendment to the US Constitution prohibits states from depriving any person of life, liberty, or property, without due process of law.

49.    42 USC § 1983 permits a cause of action against every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, subjects, or causes to be subjected, any citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution.

50.    A parent has a liberty interest in the custody, care, and management of

her children, protected by the Due Process Clause.  Plaintiff's interest was specifically set forth in the November 17, 2020, custody order and was protected by Pennsylvania law.

51.    Due process is implicated when such protected interests are subjected to intrusion by the state.  A person must be afforded the opportunity to be heard at a meaningful time and in a meaningful manner before any such intrusion.

52.    At least some process is required when a state seeks to alter, terminate, or suspend a parent's right to the custody of her minor children.

53.    The state is authorized to take a child into protective custody pursuant to 23 Pa.C.S.A. § 6315(a) and 42 Pa.C.S. § 6324.

54.    Plaintiff did not receive a hearing before the county took her children away from her on June 30, 2021.  Plaintiff did not receive notice of charges or what was at stake at the meeting of June 30, 2021.

55.    The county failed to obtain authorization pursuant to 23 Pa.C.S.A. § 6315(a)(4), whereby, "after receipt of a court order, the county agency shall take a child into protective custody for protection from abuse."

56.    Pursuant to § 6315(a)(4): "No county agency worker may take custody of the child without judicial authorization based on the merits of the situation."

57.    Pursuant to 23 Pa.C.S.A. § 6315(b), no child may be held in protective

custody for more than 24 hours unless the appropriate county agency is immediately notified that the child has been taken into custody and the county agency obtains an order from a court of competent jurisdiction permitting the child to be held in custody for a longer period.

58.    The children here were held in custody for more than 24 hours.  The county agency did not obtain an order from a court of competent jurisdiction.

59.    Plaintiff did not receive a hearing after the county took her children away from her.

60.    The county failed to obtain judicial authorization pursuant to 42 Pa.C.S. § 6324 to remove the children from the custody of their mother.

61.    23 Pa.C.S.A. § 6315(d) and 42 Pa.C.S.A § 6332(a) require an informal hearing to be held promptly by the court or master and not later than 72 hours after the child is placed in detention or shelter care to determine whether detention or shelter care is required.  Plaintiff was not given any such hearing.

62.    The county failed to hold a conference with plaintiff as required by 23 Pa.C.S.A. § 6315(f):

> "A conference between the parent . . . of the child taken into temporary protective custody pursuant to this section and the employee designated by the county agency to be responsible for the child shall be held within 48 hours of the time that the child is taken into custody for the purpose of:

"(1)   Explaining to the parent . . . the reasons for the temporary detention of the child and the whereabouts of the child, unless prohibited by court order.

"(2)   Expediting, wherever possible, the return of the child to the custody of the parent . . .where custody is no longer necessary.

"(3)   Explaining to the parent . . . the rights provided for under 42 Pa.C.S. §§ 6337 (relating to right to counsel) and 6338 (relating to other basic rights)."

63.    The agency failed to comply with requirements of 55 Pa. Code § 3490.67(a) , to send a "Child Protective Service Investigation Report form" (CY-48) to ChildLine within 30-calendar days of the receipt of the report of suspected child abuse.

64.    Pursuant to 55 Pa. Code § 3490.69, when the CY-48 form is not filed with ChildLine within 60-calendar days of receipt of the report by ChildLine, the report shall be unfounded.  Here, the CY-48 forms were not filed within 60 calendar days of June 10, and so the reports should have been unfounded.

65.    Liability under 42 USC § 1983 attaches to a municipality when execution of a government policy or custom by those whose acts may fairly be said to represent official policy, inflicts the injury.

66.    The county is liable to plaintiff through the actions of its agents, in particular, Ms. Rivera, who was either a final decision-maker with respect to the unlawful seizing of plaintiff's two children, or she acted in consultation with or

approval of other officials of the agency who may have been involved in the decision to deprive plaintiff custody of her children.

67.   Ms. Rivera is liable to plaintiff for making the decision to remove the two children from plaintiff's custody without the required due process to which plaintiff was entitled.  Ms. Rivera is an official whose acts in seizing custody of plaintiff's children on June 30, 2021, may fairly be said to be the actions of the county.  That is, with respect to the decision to seize daughter and younger son from plaintiff, Ms. Rivera's acted as the county's final decision-maker.

68.   Ms. Rivera's taking of the children without due process was a result of the county's policy or custom against providing hearings for parents such as plaintiff if another parent can take custody.  This allegation will likely have evidentiary support after reasonable opportunity for further investigation or discovery.

69.   Defendants' violation of plaintiff's rights was compounded by their joinder with an interested private party, second husband, in depriving plaintiff of her rights and in over-riding the November 17, 2020, custody order.

70.   Second husband's interests adverse to plaintiff and older son should have been apparent to defendants or easily uncovered through investigation. Second husband had a financial motive in terminating his support obligations,

including about $3,000 in arrearages, and he had reason to retaliate against older son.

71.    On June 30, 2021, second husband was close by the agency office in Stroudsburg sometime before, during, or after the forensic interviews of daughter and younger son.  A reasonable inference from these facts is that second husband had been given advance notice by the agency of the need to take custody of daughter and younger son, supporting an inference of joint action.

Damages

72.    The unlawful actions of defendants set in motion a chain of events which deprived plaintiff of primary custody of daughter and younger son from June 30, 2021, through January 1, 2023, when plaintiff regained primary physical custody and all three children could be together.

73.    Plaintiff had no contact at all with daughter and younger son for approximately six weeks after the agency took them on June 30, 2021, and saw them only sporadically for months thereafter.

74.    Following the unlawful actions of defendants, plaintiff suffered emotional harm and incurred expenses, including attorneys fees, lost time from work, private investigator fees, therapy for herself and her children, and for travel.

WHEREFORE, plaintiff demands judgment in her favor and against all defendants, awarding compensatory damages, punitive damages, interest, counsel fees, litigation expenses, and all other relief to which she may be entitled.

/s/ *Cletus P. Lyman*

Cletus P. Lyman
LYMAN & ASH
1612 Latimer Street
Philadelphia, PA 19103
(215) 732-7040/Fax. (215) 732-2496
Cletus@lymanash.com

Counsel for Plaintiff